JUDGE HERB ROSS (Recalled)

UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF ALASKA
605 West 4th Avenue, Room 138, Anchorage, AK 99501-2253 — (Website: www.akb.uscourts.gov)
Clerk's Office: 907-271-2655 (1-800-859-8059 In-State) — Judge's Fax: 907-271-2692

**Filed On 8/10/11**

In re

BRAYTON INVESTMENT, LLC,

        Debtor(s)

Case No. A10-00515-HAR
In Chapter 7

MEMORANDUM DECISION HOLDING THAT HEBERT ADVANCES DO NOT PRIME WIKA DEED OF TRUST

Contents        Page

1- **SUMMARY OF DECISION** .................................................. 1

2- **FACTUAL AND PROCEDURAL BACKGROUND** ................................ 2
    2.1- The Case is Filed and the Trustee Attempts to Sell the Real Estate .............. 2
    2.2- Dispute About the Amount of the Hebert Secured Claim ..................... 3
    2.3- The Wika Settlement and Third Deed of Trust ............................. 4
    2.4- Disputed Amounts Claimed by Hebert to be Secured ....................... 5
    2.5- The Assignment of the FNBA Second Deed of Trust and the Dragnet Clause ...... 6

3- **LEGAL ANALYSIS** ..................................................... 8
    3.1- Summary Judgment Standards ........................................ 8
    3.2- *Lundgren* and Dragnet Clauses in Alaska ............................... 9
    3.3- Applying *Lundgren* to This Case ..................................... 9
    3.4. The *Duke Law Journal and Restatement (Third) Property, §§ 2.1 - 2.4* ......... 14

4- **CONCLUSION** ........................................................ 16

      1- **SUMMARY OF DECISION**- In March 2008, Brayton Investment, LLC gave the Wikas a third deed of trust on real property in Anchorage to secure a potential liability of Suzan McCready (who owned Brayton). Later in 2008, and in 2009, Jean Hebert advanced funds to or for Suzan McCready, allegedly exceeding $1 million. Still later, in April 2010, Hebert took an

assignment of the balance of a 2006 promissory note by McCready to First National Bank Alaska (FNBA), and the 2006 second deed of trust on Brayton's property securing the note. The FNBA second deed of trust contains a dragnet clause; its rights inured to its assignees.

Do the Hebert advances to McCready prime the Wikas' third deed of trust due to the dragnet clause in the FNBA second deed of trust which was assigned to Hebert? I hold as a matter of law that they do not because it was not the intent of the "Lender," FNBA, at the time of these advances, that the Hebert advances were collateralized. And the Lundgren[1] case restricts Hebert's expansive interpretation that his 2010 acquisition of the 2006 FNBA deed of trust elevates his 2008 and 2009 advances to McCready to secured status ahead of the Wikas by virtue of the dragnet clause.

2- **FACTUAL AND PROCEDURAL BACKGROUND**-

**2.1- The Case is Filed and the Trustee Attempts to Sell the Real Estate**- This chapter 7 case was filed on June 20, 2010.

The schedules[2] show the assets were commercial land and a building, some accrued rent, and furniture and fixtures, summarized as follows:

```
Real estate & improvements (6613 Brayton Dr.) .......................... $1,377,000
Accrued rent (rounded) ...........................................           68,000
Furniture & fixtures .............................................           15,000
Total assets (rounded) ...........................................       $1,460,000
```

The secured debts[3] are summarized as follows:

```
FNBA 1ST Deed of Trust on 6613 Brayton (rounded) .......................  $600,000
Jean Hebert Deed of Trust on 6613 Brayton ..............................   116,000
Municipality of Anchorage tax lien on 6613 Brayton (rounded) ...........    22,000
Greg & Cheryl Wika Deed of Trust on 6613 Brayton (rounded; disputed) ...   576,000
Total secured debt on 6613 Brayton .................................... $1,314,000
```

---

[1] Lundgren v. National Bank of Alaska, 756 P.2d 270 (Alaska 1987).

[2] Schedules A and B, Docket No. 21.

[3] Schedule C, Docket No. 21.

The Wikas' secured claim has been reduced to about $459,000, plus some attorney fees (as yet not reduced to a definite amount) due to a claim objection by the trustee,[4] and is under further challenge from a second claims objection by Suzan McCready, which is still in the pre-trial stage.

The unsecured debt is scheduled at about *$27,000*.

On paper, it looked like the trustee had a shot at paying the creditors all or a good portion of their debt if the property could be sold for close to the $1,377,000 scheduled value. He listed the property and a sale of 6613 Brayton Drive was approved for $1,430,000 to Alyeska Capital, LLC.[5] It has been represented to the court, without objection, that Alyeska Capital, LLC, is an entity owned by Jean Hebert.

**2.2- Dispute About the Amount of the Hebert Secured Claim**- When the trustee, in preparation for closing the sale, tried to get a payoff figure on FNBA's second deed that was assigned to Hebert, he was stonewalled. So, he filed an objection to the secured claim of Hebert to ascertain the amount of the allowed claim; he calculated the Hebert payoff figure as of June 30, 2011, to be **$125,630.64**.[6]

At an expedited hearing on June 30, 2011, on the trustee's objection to Hebert's claim, Alyeska Capital, LLC, said it was not going ahead with the purchase of 6613 Brayton Drive. Hebert said his second deed of trust covered much more than $126,000. An exact, or even approximate number, could not be given to the court or the trustee at that time, but it was intimated it was probably a big enough amount so as to reduce the Wikas' equity to zero.

---

[4] *See*, interim order at Docket No. 92 and *Trustee's Response to Wikas' Attorney* at Docket No. 105. McCready has objected to some of the fees. Docket No. 108. The Wikas' claim is Proof of Claim No. 1.

[5] *Supplemental Order Granting Trustee's Application to Sell Property Free and Clear of Liens and to Disburse Payments at Closing and Authorizing Auction.* Docket No. 93, filed April 12, 2011.

[6] *Trustee's Objection to Secured Claim of Jean Hebert.* Docket No. 120, filed June 24, 2011.

MEMORANDUM DECISION HOLDING THAT HEBERT
ADVANCES DO NOT PRIME WIKA DEED OF TRUST                                                           Page 3 of 16

At the June 30th hearing, the trustee and Hebert agreed to an evidentiary hearing on August 4, 2011, to allow (or, require) Hebert to establish the amount of his claim.[7] The parties and the court later agreed to convert the evidentiary hearing on August 4, 2011, to one on dispositive motions instead, i.e. a summary judgment hearing on briefs yet to be filed.[8]

Hebert and the trustee each filed long briefs, with extensive exhibits in support of their respective positions.[9] Oral argument was held on August 4, 2011.

Hebert argued that there were disputed material facts as to the intent of Hebert and McCready with respect to the dragnet clause, so summary judgment for either the trustee or Hebert was not appropriate. On the other hand, the trustee is asking for summary judgment under Rule 56 that, as a matter of law, the advances claimed by Hebert were not secured by the dragnet clause in FNBA's 2006 second deed of trust, at least in a manner to prime the Wikas' third deed of trust.

**2.3-  The Wika Settlement and Third Deed of Trust**- In 2007, McCready contracted to build a condo at Alyeska in McCready's Cedar Creek development. The Wikas advanced $650,000 up front for construction of the condo and for a loan to McCready. Construction was delayed. The Wikas sued. The parties entered into a settlement agreement. Under the

---

[7] *Order Setting Hearing and Deadlines for Trustee's Objection to Secured Claim of Jean Hebert*. Docket No. 132, filed July 1, 2011.

[8] *Order Changing Evidentiary Hearing on August 4, 2011, on Hebert Secured Claim to Hearing on Dispositive Motions*. Docket No. 153, filed July 18, 2011.

[9] Hebert filed a *Response to Trustee's Objection to Secured Claim of Jean Hebert* (including 52 pages of exhibits), a *Supplemental Response to Trustee's Objection to Secured Claim of Jean Hebert* (including exhibits), and three affidavits of Hebert, McCready and Richard Bull (a construction and/or financial expert advisor to McCready). *See*, Docket Nos. 155-159 filed July 20-22, 2011). Hebert also filed a *Supplemental Memorandum*, Docket No. 168 on August 9, 2011. The trustee filed his *Trustee's Reply to Jean Hebert's Opposition to Objection to Secured Claim* and a *Declaration of Gary Spraker in Support of Trustee's Reply to Jean Hebert's Opposition to Objection to Secured Claim* (including 145 pages in 26 separately numbered exhibits). Docket Nos. 163 and 164, filed August 1, 2011. On August 9, 2011, the trustee filed *Trustee's Supplemental Briefing Regarding Objection to Secured Claim of Jean Hebert*, Docket No. 170, and the Wikas filed their *Memorandum Regarding Hebert Claim*, Docket No. 169.

MEMORANDUM DECISION HOLDING THAT HEBERT
ADVANCES DO NOT PRIME WIKA DEED OF TRUST                                    Page 4 of 16

settlement, the Wikas took over completion of the Cedar Creek project, and any cost overruns were to be secured by a deed of trust on 6613 Brayton Drive, the building owned by debtor.[10]

McCready caused Brayton Investment, LLC, to grant a deed of trust to the Wikas as called for in the settlement agreement (the third deed of trust on 6613 Brayton Drive). It was recorded on **March 5, 2008** in the Anchorage Recording District, which was before the disputed Hebert future advances totaling over $1 million, described in Section 2.4 of this memorandum, were made.[11]

**2.4- Disputed Amounts Claimed by Hebert to be Secured**- Here is a summary of the amounts claimed by Hebert to be currently owed to him by McCready which he argues are secured by 6613 Brayton Drive by virtue of the FNBA second deed of trust assigned to him.

The amount Hebert claims is owed on the note itself as of August 4, 2011, is **$135,471.08**,[12] plus an estimated $15,000 for costs and attorney fees. The $135,471.08 is in the ballpark of the trustee's calculation of $125,630.64, as of June 30, 2011.[13] The trustee's calculation did not included $8,000 in late fees, some accrued interest, or Hebert's costs and attorney fees. This relatively minor difference will not be determined in this decision.

The advances by Hebert to McCready (or entities she was involved in) that are disputed by the trustee are categorized by Hebert as: (a) General Advances; (b) the $200,000 promissory note; and, (c) the Moore judgment. They are summarized as follows, as of August 4, 2011:[14]

---

[10] The settlement agreement, describing the background, is an exhibit to Hebert's *Response*, Docket No. 155, Exhibit D.

[11] *See*, Docket No. 8-1 (the deed of trust is an exhibit to the Wikas' motion for relief from stay).

[12] Hebert's *Response* brief [Docket No. 155, page 5], and *Supplement* [Docket No. 156-1, Exhibit M].

[13] *Trustee's Objection to Secured Claim of Jean Hebert*. Docket No. 120, page 2.

[14] Hebert's *Response* brief, Docket No. 155, page 6-9, and supporting exhibits.

```
Gen'l Advance:  Cedar Creek costs [includes Lone Oak loan fees] (approx.) . . . $170,600.00
Gen'l Advance:  Brayton Drive costs (property taxes) . . . . . . . . . . . . . . . . . . . . . . . . 33,311.90
Gen'l Advance: Other advances . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10,000.00
Gen'l Advance:  Interest . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   42,408.00
     Subtotal of General Advances claimed by Hebert  . . . . . . . . . . . . . . . . $256,319,90
$200,000 promissory note (a loan to McCready) . . . . . . . . . . . . . . . . . . . . . . . 228,730.25
Moore judgment (foreclosure judgment against McCready bought by Hebert)   557,493.75
     Total . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $1,042,543.90
```

All of these advances occurred after the Wikas' third deed of trust was in place and before Hebert took an assignment of the FNBA second deed of trust. Hebert seeks to have these "future advances" added to the mostly undisputed amount owed to him under the terms of the note (i.e., the $126,000 - $135,000± figure). These numbers add up somewhat differently than those provided by Hebert,[15] but the differences are not relevant, given the court's conclusion that they are not future advances which prime the Wikas' third deed of trust.

**2.5- The Assignment of the FNBA Second Deed of Trust and the Dragnet Clause**- The FNBA second deed of trust on 6613 Brayton Drive was recorded in **February 2006**. The property was owned by Brayton Investment, LLC, but the deed of trust secured a promissory note in the original amount of $253,000, executed in **February 2006** by Suzan McCready, individually.[16] This was, of course, before the **March 2008** Wikas' third deed of trust described in Section 2.3 of this memorandum.

Hebert acquired FNBA's second deed of trust and note by assignment; the assignment of the deed of trust was recorded **April 7, 2010**. This was after he had already made the $1 million plus disputed future advances.

The FNBA second deed of trust contained the following dragnet clause:

---

[15] *See*, Hebert's *Response* brief [Docket No. 155, Exhibit E] and *Supplement* [Docket No. 156-1, Exhibit M].

[16] *See*, Hebert's *Response* brief [Docket No. 155, Exhibits A and B].

MEMORANDUM DECISION HOLDING THAT HEBERT
ADVANCES DO NOT PRIME WIKA DEED OF TRUST                                                    Page 6 of 16

> **CROSS-COLLATERALIZATION**. In addition to the Note, this Deed of Trust secures *all obligations, debts and liabilities*, plus Interest thereon, of *either Grantor* or Borrower to Lender, or any one or more of them, as well as all claims by Lender against Borrower and Grantor or any one or more of them, **whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note**, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated, whether Borrower or Grantor may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter may become otherwise unenforceable. [same emphasis added as in Hebert's *Response* brief[17]]

The "Lender" is defined in the second deed of trust as FNBA and its successors and assigns. The "Grantor" is Brayton Investment, LLC as it relates to the 6613 Brayton Drive property. The "Borrower" is Suzan McCready.

To show that *before April 2010* McCready intended that the FNBA second would be acquired by Hebert and used to collateralize the advances he made or was making in 2008 and 2009, Hebert attached e-mails from McCready to him dated **May 6, 2009** and **February 24, 2010**.[18] In the February 24th e-mail she suggests that Hebert (or, one of his entities) purchase the FNBA second so the financing she was receiving from Hebert would prime the Wikas' third deed of trust:

> **$114,739.67** - Funds will be used to purchase the FNB 2nd cross collateralized loan positioned in front of the DOT that is a threat to this asset. ··· Once you acquire this position you should modify the loan to increase by $200,000 the amount of the first loan you disbursed, $350,000 Moore judgment; the amount of the Lone Oak interest for keeping funds available for the Cedar Creek/Brayton DOT effort and $30,000 retainer for the lawsuit.

The e-mail suggests that the plan was to put about $700,000 (including the FNBA second's note balance) ahead of the Wikas' third deed of trust. Both the FNBA second and the Wikas' third deeds of trust were junior to a *first* deed of trust in favor of FNBA with a balance of $550,000 to

---

[17] Hebert's *Response*. Docket 155, pages 9-10.

[18] Hebert's *Response*. Docket 155, Exhibits K and L.

MEMORANDUM DECISION HOLDING THAT HEBERT
ADVANCES DO NOT PRIME WIKA DEED OF TRUST                                                                Page 7 of 16

$600,000, so most or all of the equity available to cover the Wikas' third deed of trust would have effectively been squeezed out.

The justification for these maneuvers, in McCready's mind, was: "

> I am requesting funds for the purpose of fueling a lawsuit to recover first and foremost my equity and income produced by the Brayton asset but also for potentially lost profits and damages suffered as a result of Wika's bad faith, fraudulent and predatory conduct.

3- **LEGAL ANALYSIS**-

**3.1- Summary Judgment Standards**- The standards for granting summary judgment in the Ninth Circuit are stated in In re Barboza:[19]

> · · · Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is "material" only if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact. *Id.* at 256-57, 106 S.Ct. 2505. The court must view all the evidence in the light most favorable to the nonmoving party. *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir.2001).
>
> In response to a properly submitted summary judgment motion, the burden shifts to the opposing party to set forth specific facts showing that there is a genuine issue for trial. *Henderson v. City of Simi Valley*, 305 F.3d 1052, 1055-56 (9th Cir.2002). The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir.1991).
>
> A court "generally cannot grant summary judgment based on its assessment of the credibility of the evidence presented." *Agosto v. INS*, 436 U.S. 748, 756, 98 S.Ct. 2081, 56 L.Ed.2d 677 (1978). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505.

---

[19] In re Barboza, 545 F.3d 702, 707 (9th Cir. 2008).

The trustee and Hebert stipulated to a hearing on dispositive motions to see if an extensive and expensive evidentiary hearing might be avoided. Only the trustee now seeks summary judgment.

**3.2-** *Lundgren* **and Dragnet Clauses in Alaska**- In Lundgren v. National Bank of Alaska[20] in 1987, the Supreme Court of Alaska set out some broad principles about how courts in Alaska should interpret dragnet clauses. The facts of Lundgren are discussed fully in briefs of the trustee and Hebert, so I will only recite the black letter law. The court treated antecedent debt and future advances differently.

With respect to **antecedent debt** sought to be incorporated by a later deed of trust, the court said:

> We perceive no countervailing policy reasons that would militate against including antecedent debts within the coverage of a dragnet clause only when such debts are specifically identified in the security agreement.

With respect to **future advances**, the court said:

> We also believe that dragnet clauses should be carefully scrutinized and strictly construed with respect to their coverage of future advances. In light of the authorities previously cited, the following guidelines should be adhered to in determining whether future advances are secured by a particular dragnet clause. First, the burden is upon the proponent of the clause to demonstrate that the parties intended that the future advance or "other debt" would be secured by the dragnet clause. Second, the fact that the other debt is not of the same type or character as the debt explicitly covered by the deed of trust or mortgage containing the dragnet clause is evidence that the parties did not intend the dragnet clause to cover it. Third, the fact that the other debt is separately secured and does not refer back to the mortgage or deed of trust which contains the dragnet clause is also evidence that the parties did not intend the dragnet clause to apply to that debt.

**3.3- Applying *Lundgren* to This Case**- Funds advanced by Hebert to or for McCready in 2008 and 2009 were not advances by the "Lender" under the FNBA second deed of trust at the time they were made. The deed of trust at that time inured to the benefit of the Lender, FNBA. Hebert acquired the rights of the Lender by assignment in April 2010.

---

[20] Lundgren v. National Bank of Alaska, 756 P.2d 270 (Alaska 1987).

MEMORANDUM DECISION HOLDING THAT HEBERT
ADVANCES DO NOT PRIME WIKA DEED OF TRUST                                    Page 9 of 16

Read broadly, the cross-collaterization or dragnet clause quoted in Part 2.5 of this decision could be interpreted so that the 2008 and 2009 Hebert advances became secured by the FNBA second deed of trust when it was assigned to Hebert in April 2010. Lundgren, however, reads such dragnet clauses restrictively, not broadly. Hebert attempts to make his case by arguing for a broad, inclusive interpretation. He cites only the Lundgren case in support of his argument, though he added Still v. Cunningham[21] in the supplemental briefing invited by the court.[22] Still, however, involves legal issues remote from cross-collateralization and makes no reference to Lundgren, so is not applicable to the issues facing the court.

The trustee argues the opposite – for a narrow, restrictive interpretation – and cites the court to cases from other jurisdiction which support his position.

Since neither Lundgren nor any other Alaska Supreme Court cases precisely determine how this court should rule on the facts of this case, this court's job is to predict how that court would rule,[23]

> using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance. However, where there is no convincing evidence that the state supreme court would decide differently, a federal court is obligated to follow the decisions of the state's intermediate appellate courts.

Neither party has pointed me to other Alaskan case law, so I will look to the cases of other states for guidance. The trustee has cited the court to cases supporting the restriction of the application of the dragnet clause in the FNBA second deed of trust to Hebert's advances in 2008 and 2009. And, the cases cited by the trustee has led the court to others supporting his position.

---

[21] Still v. Cunningham, 94 P.3d 1104 (Alaska 2004).

[22] Hebert's *Supplemental Memorandum*. Docket No. 168, at page 3.

[23] Vestar Development II, LLC v. Gen. Dynamics Corp., 249 F.3d 958, 960 (9th Cir. 2001).

MEMORANDUM DECISION HOLDING THAT HEBERT
ADVANCES DO NOT PRIME WIKA DEED OF TRUST                                             Page 10 of 16

One of those cases, discusses future advance clauses in a UCC setting, Kimbell Foods.[24] Applying Texas law, the court held:

> · · · Texas courts do not recognize the application of a future advance clause unless the future advance to be secured was "reasonably within the contemplation of the parties to the mortgage at the time it was made." *Wood v. Parker Square State Bank*, 400 S.W.2d 898, 901 (Tex.1966). *See also Moss v. Hipp*, 387 S.W.2d 656 (Tex.1965); · · ·. Consistent with this view, in Texas a future advance clause in a mortgage does not secure a subsequent debt from the debtor to a third party acquired from the third party by the mortgagee. *See Wood, supra*. In circumstances similar to those at bar, however, Texas courts have hinted that future advance clauses will be effective. In *Wood*, for example, the Texas Supreme Court remarked that:
>
>> The more reasonable construction of this general language (a future advance clause) is that it referred to obligations directly arising between Lincoln Enterprises (the original debtor) and respondent bank (the original lender), i. e., where Lincoln became obligated to the bank as the maker of an obligation, or became liable in a secondary capacity in favor of the bank.

*Supra* at 902.

In Moss v Hipp,[25] Falls borrowed $3,500 from Hipp in October 1960 to use as partial payment to purchase a tractor and trailer. Falls borrowed the balance of about $5,500 to buy the tractor and trailer from American National Bank in August 1961. The bank's loan was secured by a chattel mortgage on the tractor and trailer. The chattel mortgage contained a dragnet clause covering any indebtedness then or thereafter owing to the holder of the bank's note. In December 1962, Hipp paid off the bank (he was a guarantor) and took an assignment of the note and chattel mortgage.

Between the August 1961 date of the bank's chattel mortgage, and the December 1962 date that Hipp acquired the chattel mortgage, a garage repairman named Moss performed repair services on, and provided parts for, the tractor, totaling $1,800. Moss sued Falls to foreclose a

---

[24] Kimbell Foods, Inc. v. Republic National Bank of Dallas, 557 F.2d 491, 495 (5th Cir. 1977).

[25] Moss v. Hipp, 387 S.W.2d 656 (Texas 1965).

repairman's lien on the tractor. Hipp intervened, claiming his lien rights for both debts (his and the one acquired from the bank) primed Moss' repairman's lien.

Moss conceded that the lien for the assigned note from the bank was first. The only question was whether the initial $3,600 debt became secured by the chattel mortgage when he acquired it. The court held:[26]

> [Hipp] says that since he became the owner of the note secured by the chattel mortgage, the trial court erred in failing to give effect to the stipulation in the mortgage that it would also secure any other indebtedness then or thereafter owing to the holder of such note. We do not agree. Provisions of this type apply only to indebtedness which was reasonably within the contemplation of the parties to the mortgage *at the time it was made*. [emphasis added; citations omitted]

Applying Moss v. Hipp to our case: (a) Moss = Wika; (b) Hipp = Hebert; and, (c) American National Bank = FNBA. *At the time* Hebert made his financial advances to McCready, they were not within the reasonable contemplation that they were covered by FNBA's second deed of trust, which he did not actually acquire until 1-2 years later. I believe that the Alaska Supreme Court would adopt the reasoning of Moss v. Hipp under the facts in our case.

Also, in facts similar to ours, the Indiana Supreme Court in The Money Store[27] supports the trustee's argument. In a pithy summary, the court said:[28]

> Junior creditors usually wish they were higher up the priority ladder. Here, the junior creditor took an assignment of the first mortgage holder's "dragnet" mortgages, seeking to "tack on" her judgment lien and "leapfrog" the second mortgage holder. · · · Our conclusion: this was a nice try, but the original parties to the dragnet mortgages did not intend to secure a subsequent debt owed by the mortgagor to a third party.

---

[26] Moss v. Hipp, at 658.

[27] The Money Store Investment Corp. v. Summers, 849 N.E.2d 544 (Indiana 2006)

[28] *Id.*, at 546.

MEMORANDUM DECISION HOLDING THAT HEBERT
ADVANCES DO NOT PRIME WIKA DEED OF TRUST                                          Page 12 of 16

As in our case, an assignee of a mortgage in Indiana, similar to Hebert in our case, assumes the right of the original mortgagee, like FNBA as holder of the second deed of trust.[29] And, as in Lundgren, "The main consideration in construing dragnet clauses is the parties' intention."[30]

In The Money Store dispute, National City Bank's predecessor loaned money to Summers and his companies from 1992 – 1996. The loans were secured by mortgages on three lots having dragnet clauses.

Neal Summers and one of his companies borrowed about $1 million from The Money Store in September 2000. The Money Store took junior mortgages on the same three lots on which National City held its senior mortgages with the dragnet clauses. The Money Store attempted to payoff the National City senior mortgages, but the payoff was for some reason about $5,000 short of the full amount, so the National City mortgages did not get satisfied.

Then, Paula Phillips got a judgment against Summers and his companies in 2001 for $205,700 for trademark violations. Phillips next purchased the still existing National City mortgages (the ones which did not get satisfied because the payoff was about $5,000 short). In 2002, she sought to foreclose the National City mortgages, claiming they secured her $205,700 judgment, ahead of The Money Store.

The question was whether the $205,700 judgment was secured by the National City senior mortgages, ahead of the later mortgages in favor of The Money Store. While much of the decision is based on the fact that it was difficult to believe that a judgment for a trademark violation was within the "intention" of the parties to the National City mortgages, it concluded with this important alternative holding, which states the crux of why I think the trustee should prevail in our case: "Moreover, we cannot see how National City could possibly have relied on its dragnet

---

[29] Id., at 548.

[30] Id., at 548 [citations omitted]; Lundgren v. National Bank of Alaska, 756 P.2d, at 279.

mortgages to secure Summers' judgment debt to third party Phillips."[31]  Likewise, FNBA, because of the timing, could not have relied on Hebert's advances in 2008 and 2009, to drag these amounts into the dragnet clause.

This restrictive reading is somewhat analogous to <u>Lundgren</u>'s holding that "antecedent debt" is not included in a dragnet clause unless it is specifically spelled out in the mortgage instrument.[32]  While there is not an exact analogy to the facts in our case, I believe the Supreme Court of Alaska would treat the Hebert advances as a breed of antecedent debt – that is, antecedent to the 2010 assignment – which is not covered by the assigned FNBA second deed of trust unless, at a minimum, it is spelled out in the assignment or some other contemporaneously recorded instrument that the Hebert advances were intended to be secured.

In his post-argument brief, the trustee cites other cases supporting his position, which also support my conclusion.[33]

**3.4.  The *Duke Law Journal and Restatement (Third) Property, §§ 2.1 - 2.4*** - At the argument on dispositive motions on August 4, 2011, the court cited the parties to secondary authority which might give further insight into a solution to the cross-collateralization problem posed in this case.[34]

The Duke Law Journal discussed a common law rule which some courts have applied.  I agree with Hebert that, given the tenor of the <u>Lundgren</u> decision, Alaska would not regress to the

---

[31] <u>The Money Store Investment Corp. v. Summers</u>, at 549.

[32] <u>Lundgren v. National Bank of Alaska</u>, at 728-29.

[33] *Trustee's Supplemental Briefing Regarding Objection to Secured Claim of Jean Hebert*, Docket No. 170, pages 3-7, including: <u>Wood v. Parker Square State Bank</u>, 400 S.W.2d 898, 902 (Texas 1962); <u>Hudson v. Bank of Leakeville</u>, 249 So.2d 371 (Miss. 1971); and, <u>Thorp Sales Corp. v. Dolese Brothers Co.</u>, 453 F.Supp. 196, 199 (W.D. Okla. 1978).

[34] The three authorities are: (a)*Rethinking Future Advance Mortgages: A Brief for the Restatement Approach,* 44 Duke L.J. 657 (1995), by Grant Nelson and Dale Whitman ; (b) Restatement (Third) of Property: Mortgages, Chapter 2.  Future Advances, §§ 2.1 - 2.4; and, (c) 3 A.L.R. 4th 690, *Debts included in provision of mortgage purporting to cover all future and existing debts (Dragnet Clause) – modern status*, §§17, 18.

MEMORANDUM DECISION HOLDING THAT HEBERT
ADVANCES DO NOT PRIME WIKA DEED OF TRUST                                                         Page 14 of 16

common law approach which applied a rule known as the Optional/Obligatory Advance Doctrine.[35] Under that common law doctrine, "optional" advances like Hebert's would not have primed the Wikas' deed of trust. The doctrine is not moribund, however; some states still adhere to the common law rule.[36]

The authors of the Duke Law Journal article favored the statutory or judicial adoption of an estoppel or cutoff doctrine proposed by the Restatement of Property to create a bright line solution as to which future advances are covered by a dragnet clause.[37] Section 2.3(b)-(d) of the Restatement, discusses the priority of future advances and a procedure to create a type of "cutoff" or "estoppel" notice sent to the mortgagee by the mortgagor in certain situations to cutoff the right to include future advances in a prior mortgage and thus free up property for commerce. The mortgagee would be required to provide the mortgagor with a certificate, in recordable form, that a cutoff notice has been received. This would, under § 2.3(b)-(d) of the Restatement (Third) Property, cut off the rights of certain mortgagees to claim coverage under the dragnet clause for subsequent future advances.

The Supreme Court of Alaska has not, of course, judicially adopted such a cutoff procedure. Nor has any other court since the 1997 promulgation of this section adopted the cutoff procedure espoused by § 2.3(b)-(d) by judicial fiat.

I do not believe the Alaska Supreme Court would adopt such an estoppel procedure such as suggested by the Restatement, or foreclose other legal avenues to resolve the problem.

Finally, Hebert suggests that an amount of about $33,000, purportedly for payment of real property taxes on 6613 Brayton Drive, should at least be covered under the legal principle suggested in § 2.2 of the Restatement (Third) Property, *Expenditures For Protection of the*

---

[35] 44 Duke L.J., at 668-83.

[36] *See*, Shaw Acquisition Co. v. Bank of Elk River, 639 N.W.2d 873, 877 (Minn. 2002).

[37] 44 Duke L.J., at 692-702; Restatement (Third) of Property: Mortgages, § 2.3, Priority of Future Advances.

MEMORANDUM DECISION HOLDING THAT HEBERT
ADVANCES DO NOT PRIME WIKA DEED OF TRUST                                                      Page 15 of 16

*Security*.[38] While this has a surface appeal, the trustee pointed out at oral argument that it was not FNBA advancing the property tax payments, but Hebert making a personal, unsecured loan to McCready. I think the trustee is right.

4- **CONCLUSION**-   I conclude that the Supreme Court of Alaska would restrictively treat the advances by Hebert and hold that they are not covered by the FNBA second deed of trust under the undisputed facts. Thus, taking the facts as alleged most favorably to Hebert (and, apparently, to McCready), as a matter of law the trustee prevails that the Wikas' third deed of trust primes the advance shown in Part 2.4 of this memorandum as $1,042,543.90.

An order granting summary judgment to the trustee will be entered. If reversed, an evidentiary hearing will be required.

DATED: August 10, 2011

/s/ Herb Ross
HERB ROSS
U.S. Bankruptcy Judge

Serve:
Gary Spraker, Esq., for the trustee
Kenneth Battley, Trustee
Robert Hume, Esq., for Jean Hebert
David Bundy, Esq., for Suzan McCready
William Artus, Esq., for Gregory and Cheryl-Ann Wika
United States Trustee- Anchorage

08/10/11                                                                                      D7513

---

[38] *Supplemental Memorandum*, Docket No. 168, page 8.