JUDGE HERB ROSS (Recalled)

UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF ALASKA

605 West 4th Avenue, Room 138, Anchorage, AK 99501-2253 — (Website: www.akb.uscourts.gov)
Clerk's Office:  907-271-2655 (1-800-859-8059 In-State) — Judge's Fax:  907-271-2692

**Filed On
12/22/11**

In re

BRAYTON INVESTMENT, LLC,

Debtor(s)

Case No. A10-00515-HAR
In Chapter 7

MEMORANDUM OF TENTATIVE
RULINGS ON THE WIKA AND
McCREADY MOTIONS FOR
RECONSIDERATION

Contents                                                                                     Page

1- SUMMARY OF TENTATIVE RULINGS ON MOTIONS FOR RECONSIDERATION ...... 1

2- SUZAN'S MOTION FOR RECONSIDERATION .................................... 2

3- THE WIKAS' MOTION FOR RECONSIDERATION ................................ 6

4- CONCLUSION; HEARING TO BE HELD ........................................ 7

1- SUMMARY OF TENTATIVE RULINGS ON MOTIONS FOR RECONSIDERATION-

The court tentatively rules:

- Suzan's motion for reconsideration,[1] asks the court to reverse its ruling that the Wikas breached the option to purchase, giving her an offset in damages to wipe out any recovery from the Brayton deed of trust.  The motion should be **DENIED** since it does violence to the balance of the structured agreement of the parties.  And, Suzan's updated claim to damages is not persuasive;

---

[1] Suzan's *Motion for Reconsideration*.  Docket No. 228, seeking reconsideration of parts of the court's memorandum decision and interim order relating to Suzan's objection to the Wikas' POC No. 1.

- The Wikas' motion for reconsideration is likely well taken and should be **GRANTED**.[2] The court misinterpreted the Wikas' post-trial brief when it claimed $20,000 for "the amount which should have been paid to Wyrick" as an amount that was not paid at all. Apparently, at least $18,215.65 should be added to the allowed amount of the Wikas' POC No. 1.

The court will allow the parties (and, the trustee) to orally argue for or against the tentative rulings at an upcoming hearing on related issues currently set for **Wednesday, December 28, 2011, at 1:30 p.m.**

The court will also deny Suzan's and the Wikas' request to supplement the record.

### 2- SUZAN'S MOTION FOR RECONSIDERATION-

**Contract Interpretation Issue**- The Settlement Agreement was done in haste, under pressure to resolve a dispute before a superior court judge had to rule on whether the Wikas' foreclosure could go forward in March 2008.

The parties agreed to a series of defined terms, spelling out Suzan's obligations under the Settlement Agreement to the Wikas: (a) ¶ 7, defining "the Cedar Creek Completion Costs"; (b) ¶ 9, defining "the Cedar Creek Deficiency"; and, (c) ¶ 15, defining "the Remaining Balance Due." These paragraphs, among others, spelled out how Suzan's obligation for the costs the Wikas were going to incur were to be recovered by them. They fit together like nesting Russian dolls.

Then, under even more time pressure, along came the last minute option in the last sentence of ¶ 16, demanded and presumably drafted by Suzan. The clause does not fit into the scheme provided for the Wikas' recovery of their costs for finishing the triplex, and did not fit the design of the agreement. Rather than a nesting doll, it was a square peg seeking to fit into a round hole. Like the liar's paradox, paraphrased as "every statement in this quote is false," the option created a conundrum. The court interprets the paradox Suzan created against her.

---

[2] The Wikas' *Motion to Supplement Trial Record*. Docket No. 226, seeking reconsideration of parts of the court's memorandum decision and interim order relating to Suzan's objection to the Wikas' POC No. 1.

MEMORANDUM OF TENTATIVE
RULINGS ON THE WIKA AND McCREADY
MOTIONS FOR RECONSIDERATION                                                    Page 2 of 7

Suzan asks that the court honor the citation in its memorandum decision for the proposition that, in interpreting contracts, an Alaska court should try to give meaning to all clauses of a contract where possible.[3] This was to support the court's interpretation of the intent of the parties in inserting the Ward estimate into their Settlement Agreement.

She makes no attempt to distinguish the two cases the court actually did cite to hold the option found in the last sentence of ¶ 16 was unenforceable due to its inconsistency with the balance of the agreement.[4] The court continues to adhere to that holding.

Even if the option was viable, it is unclear under the testimony who, in the end, dropped the ball. Toward the end of exchanges between Michael Brain (Suzan's attorney) and William Artus (the Wikas' attorney), it is not clear why the option did not close. There is evidence that on August 27, 2009, the Wikas offered to sell Unit 3B and the duplex rights Suzan for **$1,000,000** (structured as $650,000 for Unit 3B and $350,000 for the duplex rights, to the extent it matters).[5] Quixotically, Suzan offered to pay **$1,100,000** (with some contingent terms) on September 2, 2009 – that is $100,000 more than the Wikas demand.[6]

So the parties were very close to actually closing, but apparently, during the course of the contentious dickering, the Wikas lined up a sale of Unit 3B (the middle unit), and closed off

---

[3] Matanuska Electric Assoc. v. Chugach Electric Assoc., 99 P.3d 553, 562 (Alaska 2004). Wolff v. Cunningham, 187 P.3d 479, 482 (Alaska 2008); see, Memorandum Decision Regarding McCready Objection to the Wikas' Proof of Claim No. 1, Docket No. 222, Section 3.2. page 22.

[4] Jarvis v. Ensminger, 134 P.3d 353, 358-59 (Alaska 2006); Harris v. Ahtna, Inc., 107 P.3d 271, 277-78 (Alaska 2005); see, Memorandum Decision Regarding McCready Objection to the Wikas' Proof of Claim No. 1, Docket No. 222, Section 3.4. page 27.

[5] Trial Exhibit 21, an e-mail from William Artus to Michael Brain's associate, Jason Reudy.

[6] Trial Exhibit T, a letter from Michael Brain to William Artus.

MEMORANDUM OF TENTATIVE
RULINGS ON THE WIKA AND McCREADY
MOTIONS FOR RECONSIDERATION                                                                 Page 3 of 7

negotiations.[7] So, the duplex rights and Unit 3B were ultimately sold to third parties for very close to the figures the parties last traded.

It was a zero sum game, perhaps but for a $36,000 commission received by Cheryl on the sale of Unit 3B which Suzan might have had to pay a third party had she acquired Unit 3B. So, what Suzan is arguing about is the blue sky she envisions she was deprived of. In the court's opinion, she was not damaged.

**Suzan's Damage Claim Analysis Is Unpersuasive**- The court will not allow Suzan to supplement the record with Jim Dokoozian's declaration.[8] Without having had the ability to confront Suzan and Dokoozian about the assumptions in the spreadsheet and Dokoozian's opinion, the Wikas would be denied due process. After offering the Wikas additional time to refute him (which they declined), the court allowed Mr. Dokoozian to testify in the case, although his expert report was for the most part late. The court is disinclined to give Suzan a third bite at the apple.

Additionally, the court denies the motion to reconsider on the merits as it is set forth. Suzan's spreadsheet attached to the motion for reconsideration[9] is unpersuasive as proof of damages for breach of the option to purchase Unit 3B and the duplex rights. Here are a few of the reasons:

- the analysis provides for no **management fee** (the triplex fee was to ostensibly be $40,000, and some fee in the range of **$25,000 to $30,000** for completing the duplex is implied;

- the analysis does not provide for **transaction costs** of closing on Unit 3B and the two duplex units, and if these were only 5% (a modest figure by Alaska standards for broker's fees and other closing costs) on $1,800,000 for the three units, another **$90,000** is implied (e.g., Suzan's spreadsheet takes the gross $600,000 sales price of

---

[7] Trial Exhibit U, a September 22, 2009, e-mail from Michael Brain to William Artus sent to document that the Wikas did not intend to sell Unit 3B to Suzan.

[8] *Motion to Supplement Record (Dokoozian Affidavit)*. Docket No. 229.

[9] *Motion for Reconsideration*, Exhibit 1, Docket No. 228.

MEMORANDUM OF TENTATIVE
RULINGS ON THE WIKA AND McCREADY
MOTIONS FOR RECONSIDERATION                                                      Page 4 of 7

Unit 3B as an indication she would have received that *gross* amount, and she thus took a $300,000 credit against the costs of Units 2A and 2B);

- there is no trial evidence backing Suzan's analysis of the triplex costs,[10] justifying her to then analogize them to projected costs for completion of the duplex;

- Suzan's spreadsheet analysis shows a projected construction cost of $269,301.49 each for completion of Units 2A and 2B; the duplex rights were sold to Spinell Builders for $400,000, but only part of that was for the foundation cost already incurred;

    if the duplex foundation cost $200,000 ($100,000 per Units 2A and 2B, or half of the $400,000 purchase price) and this represents 20% of completion costs for Units 2A and 2B (the court's guesstimate), **80% of the 2A and 2B construction** would remain to be done at **$269,301.49 per unit** (but, to be conservative in Suzan's favor, lets say the foundation resulted in 33⅓% of completion, leaving only 66⅔% to complete);

    the Ward estimate (net of his $40,000 fee, and an additional $30,000 for good measure or conservatism) was for about $450,000 (or **$150,000 per unit**) for construction work on the triplex that was 75-80% complete (lets call it 66⅔% to be conservative in Suzan's favor);

    the court concludes the following ratios do not jibe for construction costs that are purportedly similar (i.e., the triplex unit costs vs. the duplex unit costs), and a minimum of **$90,000** ( 2 x $45,000 [$450,000 - $405,000]) additional construction costs is conservatively implied:

    – triplex cost to compete 33⅓% of the remaining work = $150,000 (implying total cost of **$450,000 per unit**),

    does not equate to

    – duplex cost to complete 66⅔% of the remaining work = $270,000 (implying total cost of only **$405,000 per unit**).

- the premises for the exercise of the option was that Jean Hebert's money was there for that purpose; the testimony was never fleshed out as to the cost of this money; while it may have been a gift, that seems unlikely; against Suzan's projection of gross profit of  $105,698.51 per unit (16.26%), it was never explained what the cost to Suzan of getting about $1,000,000± from Hebert to exercise it would be; stated another way, the "gross profit" per duplex unit shown in the spreadsheet does not cut it to prove damages in this case; a more refined analysis is required, but has not been produced;  given Suzan's financial condition at the time and the dysfunctional nature of the project, there was much risk involved for an investor, and that risk should presumably have cost Suzan and arm an a leg, instead of the $0 acknowledged.

---

[10] Referring to the items found in the Details of Costs and Sources of Information found in Suzan's spreadsheet. *Motion for Reconsideration*, Exhibit 1, Docket No. 228.

MEMORANDUM OF TENTATIVE
RULINGS ON THE WIKA AND McCREADY
MOTIONS FOR RECONSIDERATION                                                                                                    Page 5 of 7

All of this called to mind David Stringer's analysis of Suzan's projections when she was trying to save the original FNBA loan from foreclosure. Mr. Stringer roughly calculated that Suzan was almost **$300,000** underwater in FNBA's projection of what she could have realized from the project.[11] Suzan tried to persuade Mr. Stringer, by massaging the numbers, that she actually had a **$269,000** cushion![12] Mr. Stringer did not buy it then, and the court does not now buy the unrealistically optimistic analysis of damages for the alleged breach of the option. This is a back-handed way of saying that Suzan is not credible on the damage issue.

**3-  THE WIKAS' MOTION FOR RECONSIDERATION**- Although the Wikas have moved to supplement the record, and given until January 3, 2012, for an opposition, the court will treat the request as a motion to reconsider. The record is sufficient, without supplementation, for the court to acknowledge that exclusion of an amount based on an obligation to Wyrick (All Decked Out, or ADO) was a mistake.

The label on the Wikas' claims analysis was misleading: "Amount that should have been paid to Wyrick - $20,000."[13] The court assumed that this meant an amount that had never been paid by the Wikas.

The court now recognizes that the amount claimed was similar to the numerous liens that had been compromised and paid by Cheryl out of the proceeds from Suzan's sale of Lot 6. The superior court, Judge Jack Smith, said ADO should have had lien rights, too. This amount was paid out of one of the triplex closings (and then some for fees and other damages). The actual

---

[11] *See*, Exhibit 27 of trial exhibits, email from David Stringer to Suzan McCready dated 02/01/08, at 3:30 p.m.

[12] *See*, Exhibit 27 of trial exhibits, email from Suzan McCready to David Stringer dated 02/01/08, at 7:04 p.m.

[13] *See*, the Wikas' *Final Argument and Post Trial Brief.*, page 19 and Exhibit A. Docket No. 215.

MEMORANDUM OF TENTATIVE
RULINGS ON THE WIKA AND McCREADY
MOTIONS FOR RECONSIDERATION                                                                                              Page 6 of 7

amount of the ADO lien, $18,215.65, should be added back to total costs and expenses of the Wikas, thus increasing the $186,394.67 allowed claim to **$204,610.27**.

**4- CONCLUSION; HEARING TO BE HELD**- The court invites oral argument or comment on these rulings at a hearing on Wednesday, December 28, 2011, at 1:30 p.m.

Tentatively, the court will grant the Wikas' request, but deny Suzan's, for reconsideration.

DATED: December 22, 2011

/s/ Herb Ross
HERB ROSS
U.S. Bankruptcy Judge

Serve:
David Bundy, Esq., for Suzan McCready
William Artus, Esq., for Gregory and Cheryl-Ann Wika
Gary Spraker, Esq., for the trustee
Robert Hume, Esq., for Jean Hebert
Kenneth Battley, Trustee
United States Trustee- Anchorage

12/22/11                                                                                     D7532

MEMORANDUM OF TENTATIVE
RULINGS ON THE WIKA AND McCREADY
MOTIONS FOR RECONSIDERATION                                                         Page 7 of 7