JUDGE HERB ROSS (Recalled)

# UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF ALASKA
605 West 4th Avenue, Room 138, Anchorage, AK 99501-2253 — (Website: www.akb.uscourts.gov)
Clerk's Office:  907-271-2655 (1-800-859-8059 In-State) — Judge's Fax:  907-271-2692

**Filed On
2/6/12**

In re

BRAYTON INVESTMENT, LLC,

Debtor(s)

Case No. A10-00515-HAR
In Chapter 7

**MEMORANDUM DECISION REGARDING
ALLOWANCE OF ATTORNEY FEES AS
PART OF THE WIKAS' SECURED PROOF
OF CLAIM NO. 1**

Contents                                                                    Page

1. SUMMARY OF RULING . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

2. LEGAL PRINCIPLES WITH RESPECT TO ALLOWANCE OF PRE-PETITION AND POST-
PETITION ATTORNEYS FEES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
   2.1. Legal Principles Regarding Pre-Petition Attorney Fees . . . . . . . . . . . . . . . . . 3
   2.2. Legal Principles Regarding Post-Petition Attorney Fees . . . . . . . . . . . . . . . . 4

3. APPLICATION OF LAW TO FEE REQUEST OF THE WIKAS . . . . . . . . . . . . . . . . . . . 5
   3.1. Application to Pre-Petition Fee Request . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
        3.1.1. Breach of Contract Claims, State Court Lawsuit for Attachment, Settlement
               Agreement and Post Settlement Services . . . . . . . . . . . . . . . . . . . . . . . . . 6
        3.1.2. Foreclosure of Deed of Trust, State Court Lawsuit Filed by McCready to
               Enjoin Foreclosure and Other Relief . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
        3.1.3. Wyrick Lawsuit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
   3.2. Application to the Bankruptcy Case (Post-Petition) Fee Request . . . . . . . . . . . . 10

4. SUZAN McCREADY'S CROSS MOTION FOR ATTORNEY FEES AND COSTS . . . . . . . . 14

5. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

1.  **SUMMARY OF RULING**- The Wikas moved for **$132,626.35** in pre- and post-petition attorney fees and **$4,225.55** in costs[1] arising from their dispute with Suzan McCready involving their purchase of a Girdwood townhouse from Suzan, a loan to her, and the resulting Settlement Agreement between the parties.[2]

The fees and costs are secured by a deed of trust against property owned by the debtor. The Wikas have filed Proof of Claim No. 1 to enforce a secured claim against the property.

The court has previously ruled on the allowance of some portions of the claim after hearing the respective objections of the trustee and Suzan – $204,610.32 has so far been allowed.[3] I will not repeat the background, except as appropriate, but incorporate by reference previous memoranda decisions in which I have set out the factual background more fully.[4]

In this final leg of the claim objections, related to the Wikas' attorney fees and costs, the court reduces the amounts requested as explained in the following table, showing: (a) the categories of fees and costs claimed;[5] (b) the amount requested by the Wikas; and (c) the amount allowed by the court:

---

[1] *Application for Attorney Fees and Costs*. Docket No. 244; *Memorandum in Support of Application for Attorney Fees and Costs*, Docket No. 245.

[2] A copy of the March 18, 2008 Settlement Agreement between Suzan and the Wikas can be viewed at Docket No. 222, Part 2.

[3] *Interim Order on Trustee's Objection to Proof of Claim No. 1*, at Docket No. 92; *Order Granting the Wikas' Motion for Reconsideration and Amending Order at Docket No. 224*, at Docket No. 238 (giving the updated status on the allowance of the Wikas' secured claim, prior to hearing their request for costs and attorney fees).

[4] *Memorandum Decision Regarding McCready Objection to the Wikas' Proof of Claim No. 1*, Docket No. 222, dated December 1, 2011; *Memorandum Decision Holding That Hebert Advances Do Not Prime Wika Deed of Trust*, Docket No. 171, dated August 10, 2011.

[5] The categories are named after, and the amounts requested are taken from, the Wika's memorandum in support of their motion.  Docket No. 245, at page 3.

MEMORANDUM DECISION REGARDING
ALLOWANCE OF ATTORNEY FEES AS PART OF
THE WIKAS' SECURED PROOF OF CLAIM NO. 1                                    Page 2 of 15

| Categories | Fees Requested | Costs Req'd | Fees Allowed | Costs Allowed |
|---|---|---|---|---|
| Breach of Contract Claims, State Court Lawsuit for Attachment, Settlement Agreement and Post Settlement Services | $30,150.00 | $526.52 | $28,237.50[6] | $526.52 |
| Foreclosure of Deed of Trust, State Court Lawsuit Filed by McCready to Enjoin Foreclosure and Other Relief | $18,540.00 | $1,280.55 | $0.00[7] | $0.00 |
| Wyrick Lawsuit | $26,190.00 | $1,517.41 | $0.00[8] | $0.00 |
| Bankruptcy Case [40% of requested fees allowed] | $57,746.25 | $901.34 | $23,102.50[9] | $901.34 |
| Totals[10] | $132,626.25 | $4,225.82 | $51,340.00 | $1,427.86 |

In the context of this case, some of the fees and costs claimed by the Wikas are unreasonable and will not be allowed.

## 2. LEGAL PRINCIPLES WITH RESPECT TO ALLOWANCE OF PRE-PETITION AND POST-PETITION ATTORNEYS FEES-

### 2.1. Legal Principles Regarding Pre-Petition Attorney Fees- The allowance of pre-petition attorney fees are governed by Alaska state law.[11] And, if the state law puts a reasonable restriction on excessive or unreasonable attorney fees, a bankruptcy judge, in applying state law, should also apply those constraints.[12]

---

[6] *See*, Part 3.1.1 of this memorandum.

[7] *See*, Part 3.1.2. of this memorandum.

[8] *See*, Part 3.1.3 of this memorandum.

[9] *See*, Part 3.2 of this memorandum.

[10] The court corrected minor footing errors for the attorney fees and costs requested from those shown by the Wikas in Docket No. 245, page 3.

[11] In re Siller, 427 B.R. 872, 880 (Bankr. E.D. Cal. 2010); 4 *Collier on Bankruptcy*, ¶ 502.03[3][ii]; 11 U.S.C. § 502(b)(1).

[12] In re Woods Auto Gallery, Inc., 379 B.R. 875, 883-84 (Bankr. W.D. Mo. 2007); In re Siller., *id.*

MEMORANDUM DECISION REGARDING
ALLOWANCE OF ATTORNEY FEES AS PART OF
THE WIKAS' SECURED PROOF OF CLAIM NO. 1                    Page 3 of 15

1    Alaska Civil Rule 82(a) governs attorney fees in civil actions, "[e]xcept as otherwise

2  provided by law or agreed to by the parties."  The Wikas and Suzan have agreed in their

3  Settlement Agreement to the Wikas' recovery of attorney fees both going forward from the date

4  of the agreement on March 18, 2008, and for events preceding that.[13]  Thus, I am bound to award

5  to the Wikas the  attorney fees and costs to which they are contractually entitled for the pre-

6  bankruptcy period.[14]

7    In most of the reported Alaska cases, the contractual provision explicitly limits a recovery

8  to "reasonable" attorney fees.[15]  The contractual provisions between the Wikas and Suzan do not

9  explicitly limit the allowance to fees that are "reasonable" nor do they require the Wikas to be the

10  "prevailing party."  Though the parties have not cited any Alaska cases that indicating that

11  "reasonableness" is an implicit condition of such fee-shifting agreements, I find that including

12  such an implicit condition is appropriate.[16]

13    **2.2.  Legal Principles Regarding Post-Petition Attorney Fees**-  The entitlement of a

14  secured creditor to attorney fees in bankruptcy is governed by federal law under 11 U.S.C.

15  § 506(b):

16    To the extent that an allowed secured claim is secured by property the value of
    which, after any recovery under subsection (c) of this section, is greater than the
17    amount of such claim, there shall be allowed to the holder of such claim, interest
    on such claim, and any reasonable fees, costs, or charges provided for under the
18    agreement or State statute under which such claim arose.

19

20 ────────────────────

21    [13] *See*, Section 3.1 of this memorandum decision for excerpts from the Settlement Agreement.

22    [14] O'Connell v. Will, 263 P.3d 41, 45 (Alaska 2011).

23    [15] *E.g.*, Rockstad v. Erikson, 113 P.3d 1215, 1218 (Alaska 2005).

24    [16] In re Woods Auto Gallery, Inc., 379 BR at 883 (speaking of pre-bankruptcy attorney fees to be
   awarded pursuant to Missouri state law, the court said: "Even if the contract had not provided that attorney fees
25  and costs be 'reasonable', reasonableness is an implied term in every contract for attorney fees." [citations
   omitted]).  *See, generally*, Rossi, 1 *Attorney Fees*, § 9.12. *Effect of recovery of less than amount sued for;*
26  *counterclaim* (Thompson Reuters, 2012).

27  MEMORANDUM DECISION REGARDING
   ALLOWANCE OF ATTORNEY FEES AS PART OF
28  THE WIKAS' SECURED PROOF OF CLAIM NO. 1                                    Page 4 of 15

The Ninth Circuit Court of Appeals held, in a case involving the pre-2005 version of § 506(b) (the 2005 amendment only added the proviso that the section also applied to state statutes allowing recovery of attorney fees), that this federal statute preempts state law.[17]

**3.  APPLICATION OF LAW TO FEE REQUEST OF THE WIKAS**-

**3.1.  Application to Pre-Petition Fee Request**- The Settlement Agreement has contractual provisions regarding attorney fees and costs.  Recital paragraph 9 states:

> 9.    The parties have reached an agreement to settle and resolve all issues, matters and disputes pertaining to the $477,500 payment from Wikas to Suzan, the purchase and construction of Unit 3C, the $172,500 loan from Wikas to Suzan and all other outstanding matters.  On March 5, 2008, in anticipation of the settlement between the parties and the execution of this Agreement, (a) Suzan executed a quitclaim deed in favor of Wikas for the Cedar Creek Property, and (b) Brayton executed a deed of trust in favor of Wikas against Lot One "D" (1D), Block "J", Murray Subdivision, as security for payment of the amounts she owes and will owe Wikas and as security for performance of her obligations under this Agreement.

While the court originally thought this recital might have reflected a settlement of all previous disputes, including pre-settlement attorney fees, other sections of the Settlement Agreement explicitly state that pre-settlement attorney fees and costs are recoverable by the Wikas.  Some of the substantive sections supporting this view are found in the following excerpts from the Settlement Agreement, found after Recital paragraph 9:

> 3.    . . . The undisbursed portion of the FNBA Loan will be used by Wikas to pay . . . (d) the reasonable attorney fees and costs that the Wikas have incurred and will incur because of the default by Suzan in her obligations to the Wikas. . . .
>
> * * *
>
> 7.    Wikas will keep complete and accurate records of all costs that they incur and pay to . . . (e) pay property taxes, insurance, permit fees, utilities and other costs for or pertaining to the Cedar Creek Property and the Arlberg Building, including their attorney fees and costs. . . .
>
> * * *

---

[17] In re Hoopai, 581 F.3d 1090, 1098 (9th Cir 2009).  While the opinion indicated it only applied to the pre-2005 version of § 506(b), there is no principled reason it should not apply to the present version.  See, also, Matter of 268 Ltd., 789 F.2d 674, 675-76 (9th Cir. 1986); In re Woods Auto Gallery, Inc., 379 B.R. 875, 884-85 (Bankr. W.D. Mo. 2007); 4 Collier on Bankruptcy, ¶ 506.04[3][b] (Matthew Bender & Co., Inc., 16th ed., 2012).

15.    Wikas and Suzan are unable to know and determine the amount of the Cedar Creek Deficiency at the time the sales of Unit 3A and Unit 3B will be completed.  The amount of the Cedar Creek Deficiency, *including the reasonable attorney fees and costs incurred by Wikas because of the defaults by Suzan under the agreements for the purchase of Unit 3C and the $172,500 loan, and the the* [sic] *balance of the $172,500 loan, plus accrued interest*, will be determined at the time the sales of Unit 3A and Unit 3B have been completed. . . . [emphasis added]

This language is too clear for the court to conclude that pre-petition attorney fees and costs have been waived.  And, in a pre-petition communication from William Artus to Michael Brain (Suzan's attorney) on February 5, 2010, the Wikas claimed pre-petition attorney fees, so their current claim is consistent with their past demands.[18]

There are no comparable provisions entitling Suzan to her costs and attorney fees in the event the Wikas breached the Settlement Agreement.

**3.1.1.  <u>Breach of Contract Claims, State Court Lawsuit for Attachment, Settlement Agreement and Post Settlement Services</u>**- The Wikas have asked for **$30,150.00** for attorney fees and **$526.52** for costs for this segment of their claim.  The attorney fees are comprised of 134 hours at $225 per hour.

No narrative explanation for this pre-bankruptcy segment of the billing was given.  But, I understand that the Wikas were very concerned about the recovery of their $642,500 advance to Suzan for the purchase of Unit 3C and partly as a loan.  After an initial advance of $650,000 to Suzan, which was to be used to pay off the First National Bank Alaska construction loan on the unit, Suzan voluntarily refunded $485,000 to the Wikas.  Cheryl Wika turned around and gave $475,000 back to Suzan in June 2007, with the understanding that Unit 3C would be completed by the Fall and the loan balance ($165,000 at that time, instead of $172,500) would be paid off in due course.

---

[18] *See*, February 5, 2010 letter from William Artus to Michael Brain, with a list of charges making up the Wikas' demand.  At page 24 of Exhibit B, Mr. Artus' invoices and some check references are listed.  Suzan's <u>Objection to Motion for Relief From Stay [Gregory Wika and Cheryl-Ann Wika]</u>, Docket No. 20, Exhibit B, at page 24.

MEMORANDUM DECISION REGARDING
ALLOWANCE OF ATTORNEY FEES AS PART OF
THE WIKAS' SECURED PROOF OF CLAIM NO. 1                                    Page 6 of 15

After progress on completing the townhouse stalled, the Wikas learned of Suzan's federal indictment in December 2007. They hired Bill Artus in January 2008 to recover their investment. Most of the billing in this segment relates to the Wikas' effort to get a pre-judgment attachment and in negotiating the Settlement Agreement.

Suzan has not made a detailed, or even a general, objection to this segment of Artus' billing, except perhaps to claim excess fees were claimed because a minimum of a quarter of an hour was billed for each telephone call.[19]

I have reviewed the seven pages of time entries,[20] and do not find them unreasonable with one exception. Suzan's point about the quarter hour minimum for phone calls is well taken. The court has raised this issue in several other bankruptcy cases with Mr. Artus. Just because his billing program defaults to a minimum charge of .25 does not make that charge reasonable.

There were 85 teleconference entries at .25 in this segment. At a billing rate of $225 per hour, that amounts to $4,781.25 in fees. A reasonable assumption is that most of the calls were closer to .1 hour. The court will allow .15 per item x 85 item x $225/hr. = $2,868.75. The fees will be reduced by $1,912.50 ($4781.25 - $2,868.75).

The court will allow **$28,237.50 for attorney fees and $526.52 for costs.**

### 3.1.2. Foreclosure of Deed of Trust, State Court Lawsuit Filed by McCready to Enjoin Foreclosure and Other Relief- The Wikas have asked for **$18,540.00** for attorney fees and **$1,280.55** for costs for this segment of their costs claim. Again, the Wikas have given the court little narrative explanation of the reason for the line items, but some of the background for this segment surfaced over the course of this case.

---

[19] *Opposition to Motion for Attorney's Fees and Cross Motion for Fees in McCready's Favor.* Docket No. 251, page 11.

[20] A .25 hour entry regarding Connie Taylor on 08/11/10 should have been in the Bankruptcy Case section of the billing, but the court will allow it as a minor mistake.

The Wikas began a nonjudicial foreclosure of the Brayton Investment deed of trust to recover an amount of $573,293.67. Suzan and Brayton began a lawsuit to enjoin the foreclosure, in part presumably because the amount was grossly exaggerated. There may have been other grounds to Suzan's suit (for example, breach of the option agreement), but the court has not seen the complaint nor does it recall the complaint being summarized in this bankruptcy case.

Suffice it to say, $573,293.67 was a grossly exaggerated figure in hindsight. To date, the court has allowed only $204,610.32 of the Wikas' claim, and intends to increase that by $8,359.59 for Jim McCollum's fees as the attorney who did the condominium or townhouse regime documents.[21] This will bring the total allowance to $212,969.91, plus whatever costs and attorney fees are being awarded by this memorandum. That amount is less than $300,000. Thus, the Wikas were claiming an amount in their pre-petition foreclosure which was more than a quarter-million dollars in excess of what they were entitled to. It is not reasonable for the Wikas to recover the amount of attorney fees and costs they seek under this segment of their billing in light of that factor.

I realize that the Wikas' misery began with the failure of Suzan to live up to her original contracts. But, a subsequent settlement was reached, and the Wikas undertook certain obligations and received certain collateral protection, like the Brayton Investment deed of trust. While Suzan's initial default was easily quantified as $642,500, the Wikas' claim to foreclose on their collateral was a difficult matter to quantify.

In the end, the court found the Wikas did not bear their burden to establish all the construction and related costs they sought. The evidence showed that their inexperience more probably than not led to costly delays and cost overruns that they should not be compensated for

---

[21] Wikas *Supplement to Application for Attorney Fees and Costs.* Docket No. 247, page 7. This is an identifiable item in excess of the Jim Ward estimate in the Settlement Agreement.

MEMORANDUM DECISION REGARDING
ALLOWANCE OF ATTORNEY FEES AS PART OF
THE WIKAS' SECURED PROOF OF CLAIM NO. 1                                    Page 8 of 15

1  absent an explanation showing that they were justified.  They failed to establish such an

2  explanation by a preponderance of the evidence.

3       Although state court judge Pfiffner denied Suzan an injunction to stop the foreclosure

4  before the bankruptcy was filed, I have had the opportunity for a more complete exposition of the

5  facts.  I found merit in Suzan's claim of unjustified costs overruns, in light of the Wikas' failure to

6  explain them.  Consequently, I believe that the amounts claimed as costs and attorney fees in this

7  section are not reasonable given the gross inaccuracy or exaggeration of the amount claimed in the

8  nonjudicial foreclosure, and I will deny all of them that are claimed in this segment of the Artus

9  billing.

10       **3.1.3.  Wyrick Lawsuit**- The Wikas' request for **$26,190.00** for attorney fees and **$1,517.41**

11  for costs for the Wyrick lawsuit will be denied.

12       The trustee previously objected to allowance of a secured claim based on payments the

13  Wikas make to Wyrick as a result of their unsuccessful state court lawsuit against Wyrick, except

14  to the extent of $18,215.65.[22]  As a result, the court allowed that amount, but disallowed

15  $70,863.49 of the Wikas' claim resulting from their ill-advised state law suit against Wyrick.[23]

16  These amounts did not include any claim for costs and attorney fees, the subject of this

17  memorandum.

18       Funds to pay the Wyrick claim were available to the Wikas from Suzan in March 2008

19  through the sale of Lot 6 at the time the parties were trying to clear lien claims from the Cedar

20  Creek project as a precursor to the Wikas refinancing the First National Bank Alaska construction

22     [22] Trustee's *Response to Objection to Claim No. 1*, Docket No. 85, at pages 7-11.  The $18,215.65 has

23  been allowed in an order for reconsideration, Docket No. 238.

24     [23] *See*, a copy of Superior Court Judge Jack Smith's findings of fact and conclusions of law in the

25  Wyrick lawsuit at Docket No. 11, Exhibit 20.

27  MEMORANDUM DECISION REGARDING
ALLOWANCE OF ATTORNEY FEES AS PART OF

28  THE WIKAS' SECURED PROOF OF CLAIM NO. 1                     Page 9 of 15

loan.  Instead of just paying Wyrick, the Wikas reneged on a representation to him that he did not have to file a mechanic's lien because he was going to get paid anyway.  They turned a small problem into a costly legal defeat in state court.

Parenthetically, if the decking or siding work that Wyrick only partially completed for Suzan turned out to be the basis for a legitimate cost overrun to the Jim Ward budget, that conclusion was opaquely buried in the Wikas' case in chief in support of their claim.  The court was presented with a stack of bills, but not with an clear analysis (possibly by a construction contract expert) of how the construction costs wound exceeding the Ward estimate by so much.

Consistent with the court's previous denial of the Wikas' attempt to recover these costs from the Brayton property, it will also disallow the associated attorney fees and costs of $26,190.00 and $1,517.41.

**3.2.**  <u>Application to the Bankruptcy Case (Post-Petition) Fee Request</u>-  The Wikas ask for **$57,746.25** for attorney fees (representing 256.65 hours) and **$901.34** in costs in defending and protecting their position after the bankruptcy was filed.

Suzan put the debtor in bankruptcy to forestall a nonjudicial foreclosure after Judge Pfiffner denied her an injunction.  The largest events in this bankruptcy case have been: (a) the Wikas' relief from stay; (b) the trustee's management, leasing and stabilization of the building; (c) the trustee's objection to the Wikas' Proof of Claim No. 1; (d) the proposed sale to Jean Hebert; (e) Hebert's failure to close and his unsuccessful attempt to insert his second deed of trust, purportedly including certain obligations of Suzan, ahead of the Wikas' third deed of trust; (f) Suzan's objection to the Wikas' proof of claim; (g) Suzan's motion to convert to chapter 11; and, (h) the current proceeding to liquidate the allowed amount of Mr. Artus' attorney fees and costs as a part of Proof of Claim No. 1.  As this memorandum decision is being drafted, the trustee has

MEMORANDUM DECISION REGARDING
ALLOWANCE OF ATTORNEY FEES AS PART OF
THE WIKAS' SECURED PROOF OF CLAIM NO. 1

moved to approve a new sale of the property for $1.35 million,[24] and Suzan has moved to dismiss the case.[25]

Again, there is no narrative explanation of the bill or a breakdown of the lump bill into specific projects (e.g., the relief from stay motion, the trustee's claim objection, the Hebert motion for cross-collateralization, Suzan's motions for conversion and objection to claim, etc.)  Without such a breakdown, it is nearly impossible to do a rational lodestar analysis.  Ironically, the Wikas' presentation of their attorney fee application perpetuates the same basic deficiency that the court found in the way they presented their case in chief in support of their secured claim – they have failed to present their fee application, as it applies to the Bankruptcy Case, in logical categories that the court could then analyze, and given the court instead a chronological "stack" of time entries.

So, I have determined a lodestar analysis would be too difficult and/or time consuming for this segment of the bill.  Therefore, I will take a gestalt look at the Bankruptcy Case work and reduce the amount sought by estimating the percentage that is unreasonable.

The unreasonable fees result mainly from: (a) an over-aggressive assertion of the Wikas' claim in light of the healthy cushion of property value to protect their allowable secured claim ; and (b) the Wikas' prosecution of an overblown claim in response to the objections of the trustee and Suzan.  At the same time the court recognizes that the Wikas incurred legitimate fees in defending against Suzan's claim for breach of option and against some of the trustee's objections.

First, I conclude the Wikas were overly aggressive in their approach to the bankruptcy case.  They have a large equity cushion to protect their claim.  The court has ruled that the

[24] Docket No. 259.

[25] Docket No. 260.

MEMORANDUM DECISION REGARDING
ALLOWANCE OF ATTORNEY FEES AS PART OF
THE WIKAS' SECURED PROOF OF CLAIM NO. 1

1    allowed amount of Proof of Claim No. 1, net of the Artus costs and attorney fees, is less than

2    $225,000.  About four months before the bankruptcy, Mr. Artus wrote Suzan's attorney that his

3    fees and costs were about $59,000.[26] So, it is likely that the amount the Wikas were owed was

4    then (in February 2010) and when the bankruptcy case was filed in June 2008 somewhat less than

5    $300,000.

6          If so, they were well secured and the expenditure of the $58,000 in attorney fees sought for

7    work in the bankruptcy case is, in part, unreasonable.  A reasonable creditor in the Wikas

8    position, with the equity cushion they possessed, would normally have monitored the case to

9    make sure the property was heading toward a sale.  The Wikas were very well secured by the

10   following hypothesis:

| | |
|---|---|
| Value of Brayton Investment building | $1,350,000 |
| Less: FNBA 1st Deed of Trust | ($550,000) |
| Less: Hebert 2nd Deed of Trust | ($130,000) |
| Less: Wika 3rd Deed of Trust | ($300,000) |
| Net Equity | $370,000 |
| Less:  10% estimated closing costs | ($135,000) |
| Less: Chapter 7 administrative expenses (w/o Wika contests) | ($100,000) |
| Equity after sale for unsecured creditors and debtor | $135,000 |

18         Instead, the Wikas have generated unreasonably large fees to protect their overstated claim

19   and inflicted large litigation fees on the trustee (and, Suzan argues, on her too).  "An oversecured

20   creditor is not given a blank check to incur fees and costs that will automatically be reimbursed.

---

[26] *See*, Docket No. 20-2, Exhibit B, at page 24 (attachment to February 5, 2010 letter from Bill Artus to Michael Brain setting out a cure amount before beginning a foreclosure on the Brayton property; the last six line items on page 24 are Artus' billing up to that time, totaling **$58,766.41**; this should have included the attorney fees for the Wyrick matter, which was litigated in state court in 2009).

Debtors do not pay for the education of the creditor's attorneys or legal fees for issues decided adversely to them."[27]

Paradoxically, the Wikas left it almost entirely to the trustee to fend off Hebert's cross-collateralization claim which, had it been successful, would have made them unsecured creditors, with little hope of recovering anything from the bankruptcy.  It would have been reasonable for them to have incurred attorneys fees and costs to oppose Hebert, but very little was spent on this endeavor.

Also, the Wikas allowed the trustee to take the laboring oar on Suzan's motion to convert to chapter 11.[28]  The Wikas did file an opposition,[29] but left most of the argument for the trustee.[30] Disputes such as these would have justified an award of attorney fees.

I conclude that Wikas should be allowed their reasonable fees for: (a) monitoring the case; (b)  responding (although in a minimal way) to the Hebert challenge and motion to convert.  I will deduct 10% of the $57,746.25 in attorneys fees claimed for what I have characterized as over-aggressiveness, which includes the Wikas' relief from stay motion.  I have pegged this amount to a reduction of $5,774.62 (or, about 25.67 hours at $225 per hour).

The second point is that not all the Wikas attorney fees should be awarded for defending their proof of claim.  The court partially allowed their claim in the trial on Suzan's claim objection to the extent it was within the parameters of the Jim Ward cost estimate (plus a 10% allowance for

---

[27] In re Circle K Corp., 165 B.R. 649, 653 (Bankr. D. Ariz., 1994) [citations omitted], citing In re Dalessio, 74 B.R. 721, 723 (9th Cir. BAP 1987).

[28] Docket No. 144.

[29] Docket No. 173.

[30] Docket No. 174.

MEMORANDUM DECISION REGARDING
ALLOWANCE OF ATTORNEY FEES AS PART OF
THE WIKAS' SECURED PROOF OF CLAIM NO. 1                                   Page 13 of 15

a margin of error), and overruled Suzan's contention that even that allowed amount should be denied due to the Wikas' refusal to allow her to exercise the option to purchase.

It is the court's estimate that at least half of the Wikas' attorneys fee claim was generated: (a) to affirmatively prove the *excess* amount of their construction and associated costs over the $514,000 estimate of Jim Ward (an amount Suzan did not largely dispute); and (b) too a lesser degree, in response to the trustee's claim objection to their exaggerated claim. Thus a reduction of 50% of the $57,746.25 attorney fee request is appropriate. This amounts to a reduction of $28,873.13 or 128.33 hours at $225 per hour. This acknowledges that most of the problems in this case have stemmed from the Wikas' overstated claim.

The court, therefore, determines that a reasonable allowance of attorney fees is **40% of the $57,746.25** (a 10% reduction for over litigating and a 50% reduction for prosecuting and defending an exaggerated claim), or **$23,102.50** based on the court's estimate of what was reasonable to monitor and protect their claim. I will allow the full costs requested, **$901.34**, since they are nominal.

**4. SUZAN McCREADY'S CROSS MOTION FOR ATTORNEY FEES AND COSTS**- Suzan filed a cross-motion for her costs and attorney fees.[31] The motion does not claim Suzan's costs and attorney fees in so many words, and only the title to the pleading says it is a cross motion for fees in favor of Suzan. Rather, David Bundy's fees are attached to demonstrate how much unnecessary litigation was caused by the Wikas.[32] The Wikas have not responded to the motion.

---

[31] Docket No. 251.

[32] Docket No. 251, pages 11-13 and Exhibit B.

MEMORANDUM DECISION REGARDING
ALLOWANCE OF ATTORNEY FEES AS PART OF
THE WIKAS' SECURED PROOF OF CLAIM NO. 1                                    Page 14 of 15

The Settlement Agreement does not provide for Suzan to recover attorney fees and she is barred by the American Rule from recovering them for her claims objection.[33]

**5. <u>CONCLUSION</u>**- The court will enter a final order allowing the **$204,610.32** previously allowed for Proof Claim No. 1, an additional **$8,359.59** for the Jim McCollum fees which are a legitimate cost not shown by the Jim Ward estimate, and the **$51,340.00** for attorney fees and **$1,427.86** for costs awarded by this memorandum decision.  The total is **$265,737.77.**

DATED:  February 6, 2012

_____/s/ Herb Ross_____
HERB ROSS
U.S. Bankruptcy Judge

<u>Serve:</u>
David Bundy, Esq., for Suzan McCready
William Artus, Esq., for Gregory and Cheryl-Ann Wika
Gary Spraker, Esq., for the trustee
Robert Hume, Esq., for Jean Hebert
Kenneth Battley, Trustee
United States Trustee- Anchorage                                              D7540

2/6/12

---

[33] <u>Travelers Casualty & Surety Co. of America v. Pacific Gas & Electric Co.</u>, 549 U.S. 443, 448-49 (2007).

MEMORANDUM DECISION REGARDING
ALLOWANCE OF ATTORNEY FEES AS PART OF
THE WIKAS' SECURED PROOF OF CLAIM NO. 1                    Page 15 of 15